CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

NOV 0 5 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

DARRYL W. STEVENS,         )
                                )
      Plaintiff,              )
                                )   **Civil Action No. 6:09cv00041**

v.                               )
                                )

MICHAEL J. ASTRUE,        )   **By:  Michael F. Urbanski**
**Commissioner of Social Security,**    )       **United States Magistrate Judge**
                                )
      Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Darryl W. Stevens ("Stevens") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). On appeal, Stevens contends that the Administrative Law Judge ("ALJ") erred by failing to conduct a thorough analysis of the disability opinion of a treating physician, Dr. Kenneth R. Luckay, by not providing sufficient reason to discount that opinion and by not according the treating physician's opinion greater weight. Further, Stevens contends that the ALJ erred by improperly evaluating both his pain complaints and credibility. The Commissioner maintains that the ALJ properly declined to give Dr. Luckay's opinion probative weight because it was not supported by any specific objective medical evidence and was contradicted by Dr. Luckay's medical reports indicating unremarkable findings on plaintiff's physical examinations. The Commissioner further argues the ALJ's analysis is confirmed by medical evidence presented to the Appeals Council consisting of a statement in one of Dr. Luckay's subsequent medical records indicating that Stevens was not qualified for permanent disability. Having reviewed the record, the undersigned concludes that the ALJ's decision is supported by substantial evidence and, as such, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

Accordingly, it is **RECOMMENDED** that the Commissioner's Motion for Summary Judgment (Dkt. #13) be **GRANTED**, and Stevens' Motion for Summary Judgment (Dkt. #11) be **DENIED**.

## I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a

preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

3

## II

Stevens was 41 years old on the date of the ALJ's decision, January 18, 2008. He dropped out of school in the 10th grade, but later completed one year of cosmetology training. From 1985 until 2002, Stevens worked as a hairdresser. He also worked part-time for his father's landscaping business. (Administrative Record, hereinafter "R." at 65-67.)

Stevens filed applications for DIB and SSI, initially claiming disability as of October 1, 2002. (R. 16.) In these applications, Stevens claimed disability based on fatigue, fibromyalgia, neck pain, migraines and a nose infection. (R. 184.) Stevens was injured in an automobile accident on July 4, 2006, and amended his alleged onset date to that day. (R. 11, 62-63.) Stevens' applications for DIB and SSI benefits were rejected by the Commissioner initially based on a medical records review by Dr. Alston W. Blount, Jr. on May 5, 2005, and again upon reconsideration based on reviews by Dr. Randall Hays and Joseph Leizer, Ph.D., on August 2, 2005. (R. 326-46.) An administrative hearing was held on November 7, 2007, at which Stevens was represented by a non-attorney representative. (R. 61.)

In a decision issued on January 18, 2008, the ALJ found that Stevens had severe impairments consisting of fibromyalgia/myofascial pain with fatigue; migraine headaches; degenerative disc disease of the cervical spine with radiculopathy; nasal cavity inflammation status post nasal perforation; anemia; and a medial meniscus tear of the right knee. (R. 16.) Considering these impairments, the ALJ found that Stevens could not return to his past relevant work but retained the RFC to perform a range of light work that existed in significant numbers in the national economy. (R. 24-25.) The ALJ concluded that Stevens is not disabled under the Act. (R. 27.) The Appeals Council denied Stevens' request for review on June 16, 2009 and this appeal followed. (R. 1-4.)

4

Stevens first argues on appeal that the ALJ erred by not conducting an appropriate analysis of Dr. Luckay's disability opinion, by not providing sufficient reasons to discount that opinion and by not according the treating physician's opinion greater weight. In his decision, the ALJ addressed the medical evidence in great detail, summarizing Stevens' treatment history as well as the RFC assessments performed by Dr. Luckay, two state agency physicians and a consultative examining physician, Dr. Hetzal Hartley. The ALJ commented on the fact that Dr. Luckay's assessment was done on a "checklist" form "and did not include any specific objective medical evidence in his report to support his opinion." (R. 25.) To be sure, many of the RFC assessment forms regularly completed in social security disability cases contain a checklist, in one form or another. For example, the Physical Residual Functional Capacity Assessment forms completed by the state agency physicians in this case also employ checklists. (R. 326-32.) However, such reviews typically, as in this case, contain a brief narrative explaining the rationale for the state agency physician's conclusions. (R. 330-31.) Further, the Medical Consultant Report prepared by Dr. Hetzal Hartley following his examination of Stevens on May 4, 2005 consists of a three page narrative summary of his examination and findings. The undersigned does not place much stock in the "checklist" argument frequently made in social security cases and believes that it elevates form over substance. Rather, the undersigned believes that the parties should focus on the substance of the medical evidence, in whatever form it exists.

The substance of the medical evidence in this case supports the RFC assessments of the state agency physicians and the consultative examining physician, Dr. Hartley. The medical evidence in the administrative record dates back nearly ten years before Stevens' amended onset date. Prior to that date, July 4, 2006, Stevens had been seen for a long time for his neck pain, fibromyalgia and migraines. Concerns over cocaine abuse and opiate dependence dot the record,

and Stevens had been counseled about overuse of prescription medications. Early in 2006, after failing two drug screens, Stevens was told that Dr. Luckay's office would no longer prescribe controlled medications for him. (R. 424.) Stevens' disability application, state agency assessments and consultative medical exam all predate his amended onset date.

On July 4, 2006, Stevens was admitted to the emergency room after wrecking his car. Stevens was diagnosed with a small frontoparietal hemorrhage, left knee swelling, decreased loss of consciousness and a broken toe. (R. 440-41.) A toxicology screen was positive for benzodiazepines, THC and cocaine. An x-ray of Stevens' left knee was negative. (R. 440.) Stevens complained of cervical and left hand pain, but films of the cervical spine and left hand were negative. (R. 441.) Stevens was discharged on July 6, 2006 with a cervical collar. (R. 441.) Stevens saw Dr. Luckay the next day and was offered a "one time exception to the no controlled med policy," and was prescribed Percocet. (R. 419.) Stevens did not have any medical treatment during the next four months. He saw Dr. Luckay on November 21, 2006, complaining of sleep issues and stomach pain. The medical record for that date states that Stevens was not depressed and had a normal affect, but he was provided samples of seroquel, a medication used to treat schizophrenia and bipolar disorder, for "mood stabilization." (R. 417.) During a visit the next month, on December 5, 2006, Stevens stated the medicine had helped. He was diagnosed with generalized anxiety disorder and prescribed a larger dosage of seroquel "for sleep and moods." (R. 414.) There is nothing in the notes from either of these two visits to suggest any further problems with his neck, knee, hand or head associated with the July, 2006 automobile accident. (R. 413-17.) Stevens saw Dr. Luckay a number of times in 2007 for a variety of ailments, but there is no suggestion in Dr. Luckay's notes from this period of any condition rendering Stevens permanently disabled. (R. 400-412, 478-81, 547-57.) In early March, 2007, Stevens apparently stepped in a pothole and twisted his right knee. (R. 397.) Dr.

6

Luckay referred Stevens to Dr. Christopher John, an orthopedic surgeon, who ordered an MRI and ultimately diagnosed a "right knee medial meniscal tear with effusion and pain." (R. 396.) At that time, Stevens told Dr. John that "[h]e has still been able to work although it hurts." (R. 396.)

In a Medical Source Statement: Functional Abilities Guidelines form completed on October 8, 2007, Dr. Luckay was asked to circle Stevens' estimated function, and he indicated "minimal" light work. (R. 482.) At that time, he noted that Stevens could lift and carry ten pounds frequently and twenty pounds occasionally. (R. 482.) However, Dr. Luckay also wrote that Stevens was "[c]urrently unable to work due to medical," and that he could not sustain either 4 or 8 hours of work on a sustained basis. (R. 482.) In a letter of clarification dated November 24, 2007, Dr. Luckay wrote that the lifting and carrying of weights identified in the earlier form were in error, and that Stevens should not lift or carry any weight. Dr. Luckay added that "[i]t is still my opinion that Mr. Stevens is disabled from gainful employment." (R. 501.)

On January 3, 2008, Dr. Christopher John performed an outpatient arthroscopic procedure to repair a medial meniscal tear of Stevens' right knee. After the surgery, Stevens complained to Dr. John about his left knee as well. On February 29, 2008, Stevens inquired of Dr. John about "something for SSI coverage." (R. 562.) Dr. John's note of that date states as follows: "[t]ypically after his right [knee] surgery, which was performed 01/03/2008, he would be off work for six weeks before returning to heavy labor job. He would also be off work for approximately six weeks after his left knee arthroscopy whenever that is scheduled." (R. 563.) Plainly, Dr. John, Steven's treating orthopedic surgeon, did not believe Stevens to be permanently disabled. The last note from Dr. John in the administrative record comes a few months later in follow up. During a visit on September 11, 2008, Dr. John discussed treatment options, at which time Stevens declined arthroscopic surgery to his left knee or physical therapy.

7

Dr. Stevens noted that "I think he is poorly conditioned and that is at least somewhat of an etiology for his pain." (R. 580.)

Immediately following the right knee surgery, Dr. Luckay opined that Stevens was not disabled. Part of the medical evidence provided to the Appeals Council is a report of a visit by Stevens to see Dr. Luckay on February 22, 2008. In the "Discussion" section of the record, Dr. Luckay notes the following:

> [D]iscussed continuing temp disability, if able to. Not qualified in my opinion for permanent disability. [L]abs done for [R]oanoke [O]rth. [A]fter his knee repaired, and if he continues on his meds (including seroquel) I see no reason why he cannot work and contribute positively to society. Continue on with other meds. [T]emp disability papers again filled out. [E]xpect it will be the last time.

(R. 539.)

The only conclusion that can be drawn from Dr. Luckay's completion of the RFC form on October 8, 2007, his letter of November 24, 2007 and his medical note of February 22, 2008 is that Dr. Luckay believed that it was Stevens' right knee injury that prevented him from working. On this record, even fully crediting Dr. Luckay's opinion, social security regulations do not allow Stevens to collect disability benefits as his right knee problem does not meet the one year durational requirement under the Act. Stevens told Dr. John that he hurt his right knee stepping in a pothole in early March, 2007, and his knee was surgically repaired on January 3, 2008. (R. 396-97, 567-69.) Dr. John stated that a patient having Stevens' arthroscopic procedure could return to heavy labor in six weeks. (R. 562-63.) Dr. Luckay told Stevens on February 22, 2008 that he was not qualified for permanent disability and saw no reason why he could not work. (R. 539.) In order to qualify as being disabled under the Act, a claimant must be unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 20 C.F.R.
§§ 404.1505(a), 416.905(a). Plainly, Stevens does not meet this durational requirement.

Of course, the ALJ's evaluation in this case was done before Stevens' right knee was repaired and before the statement in Dr. Luckay's and Dr. John's 2008 medical records regarding Stevens' ability to work could be considered. Even so, it is plain that the ALJ's decision is well supported. At the time the ALJ rendered his decision, he certainly considered Stevens' right knee issue, noting that "[t]he claimant performs routine activities of daily living, drives [a] car, shops and attends medical appointments. In addition, the record shows some evidence that the claimant continued to work at least part time as a landscaper despite his right knee injury. The record shows that the claimant renewed his hairdresser license in October of 2007 as well." (R. 25.) Further, the ALJ accounted for Stevens' right knee impairment in his RFC, limiting him to light work with a sit/stand option. (R. 24.)

The ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the

9

objective medical findings alone or from reports of individual examinations...."); Social Security Ruling ("SSR") 96-2p.

The ALJ is to consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," Mastro, 270 F.3d at 178, and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("[T]he notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."); see also Kratzer v. Astrue, No. 5:07cv00047, 2008 WL 936753, at *7 (W.D. Va. 2008) (noting the ALJ is expressly obligated to explain the consideration given to his opinions).

It is abundantly clear that the ALJ's decision in this case not to grant disability benefits is supported by substantial evidence. The ALJ's decision painstakingly reviewed Stevens' medical records and correctly observed that there was not "any specific objective medical evidence in [Dr. Luckay's] report to support his opinion" that Stevens could not work an eight hour day. (R. 25.) The appropriateness of the ALJ's decision is borne out by Dr. Luckay's opinion a few months later that Stevens could work and was not permanently disabled. (R. 539.) Although this information was not available to the ALJ, it was provided to the Appeals Council, and the

10

court is required to consider it pursuant to Wilkins v. Secretary, Health and Human Services, 953 F.2d 93, 96 (4th Cir. 1991).

## IV

Stevens also argues that the ALJ failed to properly credit his pain and assess his credibility. When faced with conflicting evidence in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); accord Melvin v. Astrue, No. 606cv32, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007). Accordingly, the ALJ is not required to accept Stevens' testimony that he is disabled, and instead must determine through an examination of the objective medical record whether Stevens has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-94 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers."). A claimant's statements alone are not enough to establish a physical or mental impairment. 20 C.F.R. §§ 404.1528(a), 416.928(a). "[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591 (citing Mickles v. Shalala, 29 F.3d 918, 922 (4th Cir. 1994)); see also 20 C.F.R. §§ 404.1529(b), 416.929(b). Subjective evidence cannot take precedence over objective medical evidence or the lack thereof. Craig, 76 F.3d at 592 (quoting Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)). The ALJ must determine whether Stevens' testimony about his symptoms is credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere

with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989); Melvin, 2007 WL 1960600, at *1; SSR 95-5p.

Based on this record, the court finds no reason to disturb the ALJ's credibility assessment. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ considered the entirety of Stevens' medical evidence, including all of his treating medical evidence and the RFC assessments of Dr. Luckay, Dr. Hartley and the state agency physicians, and concluded that he could perform a less than full range of light work. This credibility assessment is plainly supported by substantial evidence, particularly when the early 2008 opinions of Drs. John and Luckay are considered. On this record, the ALJ's consideration of all of the evidence was apt and does not provide the basis for reversal of the Commissioner's decision in this case.

## V

Nor is there anything in the administrative record to suggest that Stevens suffers from a severe mental impairment. Stevens argues that a Medical Opinion Re: Ability To Do Work-Related Activities (Mental) completed by Dr. John Deverter of Central Virginia Community Services on December 10, 2008, and submitted to the Appeals Council is suggestive of disability. That is not the case. In fifteen out of sixteen categories under the heading "Mental Abilities and Aptitude Needed To Do Unskilled Work," Dr. Deverter assessed Stevens as being in the unlimited, good or fair range. Dr. Deverter assessed Stevens as being poor in only one category, that being performing at a consistent pace. (R. 600-01.) He explained "[c]lient's anxiety may require frequent time outs. Physically may need periodic rest periods to deal with pain due to fibromyalgia." (R. 601.) Dr. Deverter did not believe that Stevens suffered from a

marked loss of ability to concentrate secondary to depression. (R. 602.) Under the headings "Mental Abilities and Aptitudes Needed To Do Semiskilled or Skilled Work" and "Mental Abilities and Aptitudes Needed To Do Particular Types of Jobs," Dr. Deverter rated Stevens unlimited or good in all areas. (R. 602.) Finally, Dr. Deverter noted that Stevens was likely to miss work on average more than three times a month, but noted that this was "due to fibromyalgia, not due to mental health." (R. 604.) In short, Dr. Deverter's assessment is not suggestive of total disability. Other records from Central Virginia Community Services likewise note only mild depression or anxiety and do not support a finding of total disability. (R. 494-98, 558-60, 573-78, 597-99.) These records are consistent with the opinion of the medical expert, psychologist Marshall Tessnear, Ph.D., who testified at the administrative hearing that Stevens suffered from mild depression. (R. 79.) Neither Dr. Deverter's opinion nor anything else in the administrative record suggests that this conclusion is inappropriate. As such, the ALJ's conclusion that Stevens does not have a severe mental impairment is supported by substantial evidence.

## VI

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence and, in this case, substantial evidence supports the ALJ's opinion. In affirming the final decision of the Commissioner, the court does not suggest that Stevens is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Stevens' claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported

13

by substantial evidence. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, defendant's motion for summary judgment (Dkt. # 13) be **GRANTED**, and plaintiff's Motion for Summary Judgment (Dkt. #11) be **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

Entered: November 4, 2010.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge