CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
FEB 0 8 2011
JULIA C. DUDLEY, CLERK
BY: /s/ Tau Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DARRYL W. STEVENS,<br>        *Plaintiff,*<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>        *Defendant.* | CIVIL ACTION NO. 6:09-cv-41<br><br>OPINION<br><br>JUDGE NORMAN K. MOON |

  Plaintiff Darryl W. Stevens ("Stevens") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). Pursuant to 28 U.S.C. § 636, the matter was referred to United States Magistrate Judge Michael F. Urbanski. Upon consideration of the parties' cross motions for summary judgment, (docket nos. 11 and 13) the magistrate judge filed a report and recommendation concluding that the administrative law judge's ("ALJ") benefits determination should be affirmed. (docket no. 17) Accordingly, he recommended that the Commissioner's motion for summary judgment be granted, and Stevens' motion be denied. At issue now is whether to adopt the report and recommendation in light of Stevens' timely objections (docket no. 18), and the Commissioner's responses thereto. (docket no. 19). For the reasons given below, and as set forth herein, I will adopt the report and recommendation, and grant summary judgment in favor of the Commissioner.

1

# I.

Stevens initially claimed disability as of October 1, 2002, based on fatigue, fibromyalgia, neck pain, migraines, and a nose infection. (Administrative Record, hereinafter "R." at 16; 184).[1] After being injured in an automobile accident on July 4, 2006, he amended his alleged onset date to that day. (R. 11, 62-63). On January 18, 2008, the ALJ issued a decision denying Stevens' disability claims. The ALJ found that Stevens had several "severe impairments" under 20 C.F.R. §§ 404.1520(c) and 416.920(c): fibromyalgia/myofascial pain with fatigue; migraine headaches; degenerative disc disease of the cervical spine with radiculopathy; nasal cavity inflammation status post nasal perforation; anemia and a medial meniscus tear of the right knee. (R. 18). Nonetheless, he concluded that Stevens retained residual functional capacity for "light work" as follows:

> lift, carry, push and/pull 10 pounds frequently and 20 pounds occasionally; sit, stand and or walk for 6 hours of an 8 hour workday with the option to alternate positions from sitting to standing as needed; (nonexertional) occasional balancing, stooping, kneeling crouching, crawling, and climbing of ramps and stairs; no exposure to hazards, chemicals, strong odors, dust, or fumes.

(R. 24). In light of his residual functional capacity, age, education, and experience, the ALJ then found that Stevens could perform jobs that exist in significant numbers in the national economy, including office clerk and telephone interviewer. (R. 27). Accordingly, he concluded that Stevens was not disabled under the Act. *Id.*

The ALJ gave little weight to the opinion of Kenneth Luckay, Stevens' treating physician. On October 8, 2007, Dr. Luckay completed a form opinion that stated Stevens could lift and carry 10 pounds frequently and 20 pounds occasionally, and that he could occasionally reach, stoop, and push or pull, but that he could not sustain full time work. (R. 482). On November 24, 2007 he wrote a letter amending the opinion, saying that the section on lifting and

---

[1] A more complete statement of facts is given in the report and recommendation. (docket no. 17).

carrying should have indicated "seldom/never" for all weights. (R. 582) Disregarding the opinion, the ALJ referred to its reliance on "non-specific examination findings, the claimant's history and non-specific laboratory tests." (R. 23). He also observed that the opinion was a "check list" and that it "did not include any specific objective medical evidence . . ." (R. 25).

The ALJ also gave little weight to Stevens' reports of debilitating pain. Although he concluded that "the claimant's medically determinable impairments could reasonably be expected to produce" certain disabling symptoms, such as pain, he found that Stevens' claims as to the "intensity, persistence, and limiting effects of these symptoms are not entirely credible." *Id.* The ALJ based this conclusion on, *inter alia*, evidence that no surgery had been advised for Stevens' cervical or lumbar spines; that he ambulates independently and effectively; that his anemia responded well to medication; that his depression was mild; and that he performs routine activities such as driving, shopping, and attending medical appointments, in spite of his various diagnoses. *Id.* He also relied on evidence that Stevens continued to work part time as a landscaper, and that he renewed his hairdresser license in October 2007. *Id.*

On appeal, Stevens asks that the court reverse the ALJ's decision because it gave inadequate weight to Dr. Luckay's opinion, and improperly evaluated Stevens' credibility. Finding no error, the magistrate judge recommended upholding the ALJ's determinations. *Report and Recommendation, hereinafter "R&R"* at 10, 12. In the alternative, Stevens moves that the court remand the case for consideration of post-hearing medical evidence submitted to the Appeals Council, which declined to review the ALJ's decision. (R. 6) While the magistrate judge made no explicit recommendation on the remand issue, he found that the post-hearing evidence merely tended to confirm the ALJ's decision.

Now pending before the court are Stevens' objections to the report and recommendation.

The court must review *de novo* those portions to which the objecting party has raised specific objections. 28 U.S.C. § 636(b)(1). General objections that merely reiterate arguments presented to the magistrate judge lack the requisite specificity, and may operate as a waiver of the party's objection. *See Veney v. Astrue*, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008); *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) (objections waived where party merely identified discrete claims that the magistrate judge resolved, and then urged that they be resolved in his favor).

## II.

A treating physician's opinion is given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Courts may also consider whether the treating physician's opinion is conclusory. *See Davis v. Apfel*, 166 F.3d 331, 1998 WL 827322, at *3 (4th Cir. 1998) (unpublished table opinion) ("the ALJ properly discounted the opinions of . . . treating physicians . . . because the opinions were conclusory and inconsistent with various activities that [the claimaint] has engaged in over the years."). In his motion for summary judgment, Stevens argued:

> The ALJ did not conduct a thorough analysis of Dr. Luckay's opinion and failed to provide good reasons as to why he rejected Dr. Luckay's opinion. The ALJ made no findings that Dr. Luckay's opinions were inconsistent with the other substantial evidence in the record and instead, it appears he rejected Dr. Luckay's opinions merely because he did not like the form given to Dr. Luckay to solicit his opinions and the fact that it was a "check list."

(docket no. 12). In his objections to the report and recommendation, Stevens repeats the above language verbatim, and then essentially adds that the magistrate judge was wrong to disagree.

The court need not address Stevens' general objection. *See Veney*, 539 F. Supp. 2d at

4

845; *Spencer*, 449 F.3d at 725. However, in an abundance of caution, I observe that the magistrate judge was correct that the decision to discount the treating physician's opinion was supported by "persuasive contrary evidence." *See Mastro*, 270 F.3d at 178. As noted in the report and recommendation, the ALJ performed an exhaustive review of the medical evidence. Among many other things, the record included a state agency's residual functional capacity determination, which was consistent with the ALJ's residual functional capacity determination; files from Stevens' treating orthopedist, which suggested that Stevens would need weeks, not months to recover from his knee problems; and records from Stevens' oncologist-hematologist, which showed that Stevens' anemia responded well to treatment. (R. 23). Moreover, there was substantial evidence that despite Stevens' many ailments, he continued to engage in normal day to day activities. (R. 25).

Furthermore, the ALJ satisfied his duty to evaluate Dr. Luckay's opinion and indicate the weight given to it. *See* 20 C.F.R. §§ 404.1527(b) and 416.927(b). The opinion was conclusory, grounded in unspecified "exams, history, & labs," and did not describe the basis of Stevens' disability, except to say that it was "due to medical." Recognizing these flaws, the ALJ referred to the opinion's "non-specific" examination findings and laboratory tests, and dismissed the opinion as a mere "check list."[2] (R. 23, 25). While this discussion was not lengthy or detailed, it was nonetheless sufficient. *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n. 10 (4th Cir. 1999) ("If a reviewing court can discern what the ALJ did and why he did it, the duty of

---

[2] The report and recommendation expresses doubts about the persuasiveness of "check list" arguments proffered in Social Security cases, as they may "elevate[] form over substance." R&R at 5. As the magistrate judge observed, some check lists may be robust and accompanied by narrative explanation. *Id.* These are not problematic. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (ALJ properly discounted treating physician's opinion consisting of three check lists which cited no medical evidence and provided little elaboration); *Anderson v. Astrue*, No. 09-02599, 2011 WL 124604, *10 (D. Kan. January 14, 2011) (noting that check list opinions are not entitled to controlling weight "[w]ithout evidentiary or testimonial support.") However, in the context of the ALJ's determination in this case, it appears that the ALJ used the words "check list" as a shorthand to indicate that the opinion was cursory and unadorned. While this language was somewhat imprecise, it permits the court to understand the ALJ's rationale.

5

explanation is satisfied.") (internal quotation marks omitted).

Stevens also objects to the magistrate judge's observation that post-hearing records tend to validate discounting Dr. Luckay's pre-hearing disability opinion. Following an appointment with Stevens in February 2008, his records state:

> [D]iscussed continuing temp disability, if able to. Not qualified in my opinion for permanent disability. [L]abs done for [R]oanoke [O]rth. [A]fter his knee repaired, and if he continues on his meds (including seroquel) I see no reason why he cannot work and contribute positively to society. Continue on with other meds. [T]emp disability papers again filled out. [E]xpect it will be the last time.

(R. 539). In light of the above, the magistrate judge concluded that Dr. Luckay must have based his pre-hearing disability opinion on the medial meniscus tear in Stevens' right knee. Considering evidence from Stevens' orthopedist, the magistrate judge then concluded that "even fully crediting Dr. Luckay's opinion, social security regulations do not allow Stevens to collect disability benefits as his right knee problem does not meet the one year durational requirement under the Act." *R&R* at 8.

Stevens avers that by focusing on his knee injury, the report and recommendation ignores Dr. Luckay's diagnoses of myalgia and myositis, cervicalgia and migraines, bilateral ankle edema, and anemia. But this criticism merely highlights that the disability opinion does not describe the basis of the alleged disability. Moreover, whatever that basis may have been, the record unequivocally shows that Dr. Luckay found Stevens was "not qualified . . . for permanent disability" as of mid-February 2008.

Stevens also objects that Dr. Luckay's post-hearing statements pre-dated the diagnosis of a medial meniscus tear in Steven's left knee in late February 2008. However, as discussed more fully below, records from Stevens' treating orthopedist suggest that the left knee condition could have been managed, had Stevens not foregone surgery. As such, it was proper for the magistrate

6

judge to conclude that post-hearing records tend to confirm the ALJ's decision to disregard Dr. Luckay's pre-hearing opinion.

## III.

Stevens raises a number of objections regarding the ALJ's assessment of his pain and credibility. First, he objects to the magistrate judge's observation that post-hearing records tend to confirm the ALJ's findings. In particular, he argues that it was inappropriate to consider the opinions of Dr. Luckay and Dr. Christopher John, Stevens' treating orthopedist. But even if it were incorrect to consider those opinions, it would not justify rejecting the report and recommendation. The recommendation not to disturb the ALJ's credibility finding rested on "the entirety of Stevens' medical evidence," and the ALJ's opportunity to observe and evaluate the demeanor of the claimant. *R&R* at 12. Even assuming that Stevens' objection had merit, it would do little to undermine the entirety of the evidence, or cast doubt on the ALJ's greater institutional capacity to evaluate credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimaint, the ALJ's observations concerning these questions are to be given great weight.").

Moreover, it was appropriate for the magistrate judge to consider the opinions of Dr. John and Dr. Luckay. Dr. John opined that after a procedure of the type Stevens had on his right knee, a patient would typically need six weeks to recover before returning to a "heavy labor job." (R. 562-63). Stevens submits that this statement should be disregarded because he reported significant pain more than six weeks after knee surgery. However, the record shows that Dr. John was aware of Stevens' pain, but he did not expect it to be debilitating in the long term. Indeed, he wrote "I think he just needs to strengthen his right knee a little bit more." (R. 562).

7

Months later, he reiterated that much of the pain could be explained by Stevens' poor conditioning. (R. 580).

As discussed above, Dr. Luckay's records from February 2008 show that he did not then consider Stevens to be qualified for permanent disability. (R. 539). Stevens argues that this evidence should be discounted because it predates the diagnosis of a medial meniscus tear in his left knee. However, the evidence arises well after the alleged onset date of disability in 2006. Thus, regardless of whether Dr. Luckay considered the condition of Stevens' left knee, the evidence tends to discredit Stevens.

Stevens further objects that pain itself can be disabling, and that while there must be objective medical evidence of some condition that can produce pain, there need not be objective evidence of pain itself. *See Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006); *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); *Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986); *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). These arguments were raised before, and properly addressed by the magistrate judge. *R&R* at 11-12.

Moreover, although Stevens correctly states the law, his argument is beside the point. The ALJ did not reject Stevens' claim merely because of a lack of objective evidence of pain. Instead, he rejected it because the subjective evidence was not credible. In fact, the ALJ went through the analysis that the case law prescribes. First, he determined whether "an underlying impairment capable of causing pain is shown;" then he determined whether "subjective evidence of the pain, its intensity or degree . . . support[s] a finding of disability." *Hines*, 453 F.3d at 564. Thus, although the ALJ concluded that Stevens had severe impairments that "could reasonably be expected to produce" pain, he nonetheless found that Stevens' claims as to duration and intensity were not credible enough to support a disability finding. (R. 25). Importantly, the ALJ

8

properly identified significant objective evidence in the record that Stevens overstated the extent of his pain, including evidence that he ambulated independently, that his conditions were mild or responding to treatment, and that he continued normal day-to-day activities in spite of his diagnoses. *Id.* Nothing in the case law requires the ALJ to take the claimant at his word, in the face of significant contrary evidence. *See Hines*, 453 F.3d at 565 n. 3.

## IV.

Finally, Stevens objects that the report and recommendation failed to address whether the post-hearing evidence submitted to the Appeals Council justifies remanding the case. "The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" *Wilkins v. Secretary of Health and Human Services*, 953 F.2d 93, 96 (4th Cir. 1991) (quoting *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is new if it is "not duplicative or cumulative," and material "if there is reasonable possibility that the new evidence would have changed the outcome." *Wilkins*, 953 F.3d at 96. While the report and recommendation makes no explicit finding concerning the remand issue, it is clear that the magistrate judge considered the post-hearing material and found that it would not likely have changed the outcome of this case. *See R&R* at 7-8, 12-13.

In Stevens' brief in support of the motion for summary judgment, he emphasized post-hearing medical records from John Deverter, a psychiatrist. According to Stevens, "Dr. Deverter opines that the plaintiff's mental impairments of depression and anxiety are much more severe than opined by the ALJ . . . ." (docket no. 12). The magistrate judge rejected that claim, finding that Dr. Deverter's assessment did not suggest total disability. In fact, he found that it was consistent with the opinion of psychologist Marshall Tessnear, who testified before the ALJ that

Stevens suffered mild depression. *R&R* at 13. The magistrate judge then concluded that "[n]either Dr. Deverter's opinion nor anything else in the administrative record suggests that this conclusion is inappropriate." *R&R* at 13. As Stevens has not raised any specific objection to the magistrate judge's findings with regard to Dr. Deverter, I will adopt them.

Stevens specifically suggests that the court consider medical records from Dr. John. However, as discussed above, it is clear that the report and recommendation relied on the new evidence from Dr. John in rejecting Stevens' appeal. Following arthroscopic knee surgery on January 3, 2008, Stevens asked Dr. John about "something for SSI coverage." Then, as the magistrate judge noted, the doctor opined that a patient would typically return to "a heavy labor job" about six weeks after such surgery.[3] (R. 562). Despite showing only a "bit of internal improvement" after about two months, the record suggests that Dr. John anticipated a more complete recovery. (R. 562) Stevens "just need[ed] to strengthen his right knee a little bit more." (R. 562).

Dr. John also evaluated Stevens' left knee, and ultimately diagnosed him with another medial meniscus tear. (R. 580). Despite the doctor's recommendation, Stevens indicated that he declined any operation on his left knee because he was unsatisfied with the improvement in his right knee after surgery. (R. 580). Although Stevens continued to report pain, the record suggests that Dr. John thought the pain manageable. Indeed, he noted that Stevens was "poorly conditioned and that is at least somewhat of an etiology for his pain." *Id.* But despite this, Stevens declined to undergo "formal physical therapy." *Id.* In consideration of the above, the post-hearing evidence from Dr. John is consistent with a finding of no disability.

Stevens also specifically suggests that the court consider records from Alfred Durham,

---

[3] Furthermore, as the magistrate judge observed, the evidence submitted to the Appeals Council shows that Stevens' treating physician Dr. Luckay concluded, just weeks after Stevens' surgery on his right knee, that Stevens was not qualified for permanent disability. (R. 562).

another orthopedist. After an appointment on December 9, 2008, Dr. Durham's impression was "[m]ild medial compartment arthritis a little bit worse on the right [knee] than the left." (R. 627). It is unlikely that evidence of this mild condition would have changed the ALJ's disability determination.

In consideration of the evidence presented to the Appeals Council, and particularly evidence from Dr. Deverter, Dr. John, and Dr. Durham, I find that there is no reasonable possibility that such evidence would have changed the outcome before the ALJ. *Wilkins*, 953 F.3d at 96. Therefore, Stevens' objection will be overruled.

V.

For the reasons given herein, and as set forth above, the report and recommendation will be adopted. Accordingly, Stevens' motion for summary judgment will be denied and the Commissioner's motion for summary judgment will be granted.

The Clerk of the Court is directed to send a certified copy of this opinion and the accompanying order to all counsel of record.

Entered this 8th day of February, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE